Okay, we're going to go on to Ulanbek Kadyr Uulu v. Merrick Garland. Mr. Trace, there you are. Hello, Mr. Trace. Good morning, Your Honor. How are you today? We're very, you know, it's Valentine's Day. It is. Love is in the air. It really is for all of you, I promise. You may begin any time you wish, or we can continue to talk about love. Okay, all right. We will do both. Thank you, Your Honor. May it please the Court, my name is David Trace, and I'll be representing the petitioner today, Mr. Ulanbek Ulu. This case, Your Honor, is an asylum case, and really what it boils down to is whether the appellant was credible. And the judge, in her opinion, and the BIA affirmed that there were a number of inconsistencies between the asylum hearing and the asylum interview. I think one of the key inconsistencies that the judge noted was the use of chlorine gas, or chlorine, while the appellant was jailed. What she said was that it wasn't reported in the asylum interview, and it indeed was. She also goes on to state, and I quote, Additionally, he testified that he believes there was something in the air, such as chlorine, that made him lose consciousness in the basement cell. This is not a trivial inconsistency. It's significant as it's central to his asylum claim. Now, there are some inconsistencies between the five-year period of the asylum interview and the hearing, but this one that the judge herself says is central is not. And I think that kind of bridges to other noted inconsistencies that may have been indeed trivial, such as dates. The judge seemed to make much of dates that occurred. Was it the 24th, the 25th, or the 26th? Certainly, it was in that timeframe. There's not a whole lot made out of whether or not it occurred. And during cross-examination at the asylum hearing, there was nothing that came to light that the appellant was not telling the truth. What was cited was inconsistencies of date and inconsistencies between the asylum interview and the asylum hearing during that five-year period of time. What's not taken into account, of course, is that during that five years, as the appellant explained, his memory became clearer. He was less traumatized and he was more together. And also, with the help of an able attorney, he was able to develop evidence. He didn't have an attorney at the interview. And it's also disconcerting that the immigration judge and the BIA affirming that certain corroborative evidence was not given its due, including medical records, a letter from an attorney in Kyrgyzstan. The judge stated that she could not say that they were authentic. Well, she could not say that they were not authentic either without having someone determine whether they indeed are authentic. Mr. Trace, you do argue in the brief that Mr. Ulu's improved recollection or shifting recollections were the result of trauma, you know, since resolved or resolving. Do we need some sort of evidence in the record of that aside from your argument in the brief or not? If you're asking me, is there something from a psychiatrist or psychologist, there is not. You know, there isn't. You know, the court, though, has long recognized even without that type of evidence, people recollection changes. And I cited a case from here, not from this circuit, but from the fourth, where they recognize that being subjected to vicious abuse leaves both body and mind scarred by the experience. They seem that court seemed to just administratively recognize that that would occur, you know, that that type of abuse doesn't leave scars. And certainly not all people are going to, even though maybe they should seek professional help in clearing that up for themselves. Which account of Mr. Ulu's do you consider the most accurate or is that the wrong question to be asking? And if so, why? Well, I think the most accurate account is that he was persecuted based on his political opinion and that he was arrested, that there was chlorine gas used upon him. And I say that because that is not inconsistent. Now, that's in the asylum interview and it's in the asylum hearing. What also isn't inconsistent is that he was beaten. We know he was beaten. We may not know the exact date, whether it was April 24th, 25th or 26th. That's open for projection, but... Twice, on both April 24th and 25th. And the wife's statement, the brother's statement, the neighbor's statements, those are the hurdles. Can you help us with those? I'll try. I think what, you know, with the wife, he explained he didn't want to scare her. And I think that's reasonable. You know, often a spouse will keep something from another spouse to avoid worry, to avoid, you know, fear for herself and the children or something happening to him. As for the neighbors, what they did all state that they saw, it all happened on the 26th. Now, whether it was the 25th or the 26th, they were consistent there. And I can't think of any reason why they would have to lie or that the attorney would be anything but forthright in saying that, you know, Mr. Uri was convicted in absentia. It's just, you know, that's taking it a little beyond reasonableness. Okay. All right. I'll reserve the remaining time, Your Honor. Thank you. I'll give you the full... Did you have another question, Your Honor? No. Thank you so much. Thank you. Thank you. Ms. Blosser, there you are. Hello, Ms. Blosser. Good morning. May it please the Court, Kristen Blosser on behalf of the respondent, the United States Attorney General. The petition for review in this case should be denied, as substantial evidence supports the agency's adverse credibility determination, which is based on three specific and significant inconsistencies between petitioner's testimony before the immigration judge and his prior statements before an asylum officer, as well as his supporting documents. Petitioner points to nothing that would compel a contrary conclusion or that would rehabilitate his shifting account of events. First, and perhaps most significantly, petitioner was inconsistent regarding whether he was ever physically harmed by the police or government officials after his arrest on April 24, 2013. In his interview with the asylum officer, he claimed he was only harmed once in his home country, and that incident occurred at the hands of four unknown men while he was in the street. However, before the immigration judge, his testimony shifted, and he claimed to have been detained for multiple hours and having been physically abused by the police or government officials who were detaining him, but he made no mention of this physical abuse ever occurring in his prior statements to the asylum officer. And as the immigration judge emphasized, this is material to petitioner's claim that he fears being persecuted by the government on account of his political opinion. Now, petitioner's brief before this Court largely ignores the issue here, instead claiming that what we're dealing with are trivial inconsistencies or discrepancies surrounding dates. But there's nothing trivial about this discrepancy. We're talking about a major event that was completely omitted from petitioner's initial statements before an asylum officer. And petitioner's focus on the odor of chlorine misses the point again. The immigration judge's adverse credibility determination, when we look at it and take it in context, was not highlighting an inconsistency between whether petitioner did or did not smell chlorine when he was detained. What the immigration judge was discussing in that portion of her decision was the inconsistency in petitioner's statements regarding whether he was physically harmed by government officials. I know that you want to get to two other inconsistencies, but I want to skip to some things that do bother me. I mean, for example, the letter from the lawyer. The IJ disregarded that because she had already made an adverse credibility finding about Mr. Ulu. So then she says, well, I'm going to disregard the letter from the lawyer. And I'm concerned about that. Do you have any precedent showing that the IJ can disregard a supporting document from a petitioner based on a credibility finding in the same proceeding as opposed to a successive proceeding? Because the case you cite, Zheng Zhu Lin, was about an adverse credibility finding years before. I think over a decade before. And then in a new reopened hearing, documents came up. And so the court decided to disregard those documents. But it wasn't the same exact hearing like we have here. Understood, Your Honor. And that case that the immigration judge cites in her decision, that Zheng Zhu Lin case, she cites it in a paragraph where she's also discussing the fact that that letter from the attorney was inconsistent with petitioner's statements and other documentary evidence in the record. So I think what the immigration judge was highlighting there, in addition to the fact that the official documents from Kyrgyzstan that were submitted together with that letter from the attorney were not authenticated, and the petitioner had the burden to authenticate those documents, the immigration judge is pointing to the fact that even this document is inconsistent with petitioner's own statements to an asylum officer as well as other documents in the record. And I think that C generally cite is the immigration judge's attempt to explain that this is a case where we have multiple different accounts of events, and the immigration judge is left with being placed in this position of having to figure out what's true, what really happened to petitioner. And these supporting documents, even those don't corroborate petitioner's inconsistent account. They instead play into those inconsistencies as well. Is that your same position about the medical report? Doesn't the medical report at least corroborate injury in a beating on April 25th? The medical report does discuss the beating that occurred on April 25th by those four unknown individuals in the street. And the problem with that is that, again, it's not going to really the crux of the case here whether petitioner suffered physical abuse at the hands of government authorities, and that's the essence of his claim. That report makes no mention of these alleged incidents of physical abuse occurring during his detention. They're only related to that incident in the street. And, again, that was the incident in petitioner's statements to the asylum officer that he claimed was the only time that he was physically harmed in his home country. And so that brings me to the second inconsistency which the immigration judge relied upon, which was petitioner's inconsistent narratives regarding that attack that occurred in the street on April 25th. Before the asylum officer, petitioner responded in detail when asked about what harm he'd suffered in his home country, and he recounted that he'd been released from detention. He wanted to call his family. His phone was dead. He wasn't able to. He left. He walked about 200 meters from the police station, and there he was attacked. Now, again, before the immigration judge, his testimony shifted, and he said after he was detained he took a 45-minute cab ride home, and there, about 50 meters from his home, is where he was actually attacked. And so, again, the immigration judge reasonably relied on this inconsistency to support the adverse credibility determination. Finally, the immigration judge relied on the third inconsistency regarding whether petitioner was ever arrested for a third time on April 26, 2013. Before the asylum officer, petitioner specifically made the extra effort to supplement his written statement, which omitted any mention of an arrest occurring on April 26, and said that he was arrested on that date and detained for several hours. But before the immigration judge, again, he said he wasn't arrested on that date. He wasn't arrested that third time, but he told police that he was sick and he was unable to report. Now, petitioner offered an explanation at that point, and this kind of brings us to what my colleague on the other side was mentioning regarding stress. Well, petitioner's explanation for that inconsistency when confronted with it was that he was stressed during the interview with the asylum officer. But the immigration judge considered this explanation, and petitioner did not specifically address any kind of trauma. There isn't anything in the record that would lead us to believe that that was an issue there. He spoke regarding general stress, and that that stress happened in his interview with the asylum officer, happening about a year after he'd entered the United States. This was a non-adversarial proceeding. Petitioner was having that interview and was aware that that interview was occurring because he'd affirmatively applied for asylum and was requesting asylum on the basis of what had happened to him, as was his right. So the immigration judge reasonably determined that that explanation was not convincing here. I think taking all of these inconsistencies together, as the immigration judge properly did, under the totality of the circumstances, the immigration judge properly concluded that petitioner failed to testify credibly. The remaining documentary evidence does nothing to rehabilitate his shifting testimony or to explain the inconsistencies created by the shifting account of events. This is not simply a matter of inconsistent dates or trivial inconsistencies. Instead, the immigration judge was relying on significant inconsistencies surrounding all three of the pertinent events on which petitioner based his entire claim. So under the standard of review in this court, the question is whether a reasonable fact finder would be compelled to conclude that petitioner was credible. And here the record simply does not compel such a conclusion. So unless the court has any further questions, I would just briefly sum up and request that the petition for review be denied. Thank you. Thank you, Ms. Blatt, sir. Mr. Traist. Thank you, Your Honor. In response, I'd like to first address the government's assertion that the immigration judge, when stating that the use of the chlorine gas was not a trivial matter, was a broad statement. And it wasn't. It's right there on page 35 in the record of the judge's opinion, second paragraph, about halfway through. She's talking about the use of the chlorine gas specifically. Also, as Judge Jackson mentioned, there was the medical records were disregarded. And there, the judge disregarded it because it didn't say who caused the injury. She didn't disregard it because that's what she said. There's nothing there that says who caused the injury in the report. And the corroborative evidence, she disregarded all of it pretty much. But you've got to let in something, right? Mr. Traist, to be clear, Mr. Hulu himself testified he doesn't know who caused the injury on the day he was attacked by four assailants, correct? Yes. He said he didn't know who they were, whether they were police, whether they were from an opposition political party, or they were just, you know, thugs. He didn't know. But I will say, you know, in closing, you know, as the government has mentioned, it seems like the immigration judge sometimes didn't know what to do with the evidence, didn't know what to do with the testimony. And instead of ferreting it out or having a continuance to have documents authenticated, she made an adverse finding of credibility. And there's enough here to look into it further. As she said in her closing, she believes all of this can happen in Kurdistan. She just didn't believe it happened to him. I think there's enough there to show that it did. If there's nothing else, then I'll close. I'll rest. Thank you, Mr. Traist. Thank you, Judge Goldman. Thank you, Mr. Traist, and thanks to Ms. Blosser. And we will take the case under advisement.